IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

KOJOUA VU,

                Plaintiff,                        OPINION AND ORDER

v.

                                                   22-cv-65-wmc

ANDREW TOLVSTAD and
KEVIN LOZANO,

                Defendants.
---

      In December 2020, City of La Crosse police officers stopped plaintiff Kojoua Vu for an alleged traffic violation, ultimately leading to a search of her car and arrest. Vu filed this lawsuit against two officers involved in that stop, search and arrest, as well as a subsequent search of her cell phones, claiming that all of these actions violated her Fouth Amendment rights. Defendants have moved for summary judgment, contending that they did not violate Vu's constitutional rights; alternatively, they assert entitlement to qualified immunity. (Dkt. #57.) The court concludes that defendants are entitled to qualified immunity, so their motion for summary judgment will be granted. For this reason, plaintiff's pending motions to compel (dkt. #103) and to stay proceedings (dkt. #105) will also be denied as moot and this case will be closed.

UNDISPUTED FACTS[1]

**A. February 2020 Investigation**

      In February 2020, defendant Andrew Tolvstad, an investigator with the City of La Crosse Police Department, was investigating two individuals, Sandy Xiong and Zachary

---

[1] The following facts are drawn from the parties' proposed findings of facts and responses, and are undisputed except where noted.

Pupp, both of whom were believed to be involved in transporting and selling methamphetamine in the area. On February 10, 2020, while Tolvstad was surveilling Xiong and Pupp's residence, he saw plaintiff Kojoua Vu come and go from the residence twice. Later that day, Xiong and Pupp were arrested, and Tolvstad obtained a search warrant for the residence.

Officers found more than 200 grams of methamphetamine in the residence. According to defendants, officers conducting the search also found in a small bedroom Vu's driver's license and address book, as well as mail addressed to her. The same bedroom also contained clothing in Vu's size, a small bag of marijuana, 1.2 grams of methamphetamine, and several items related to drug trafficking, including packing supplies, a vacuum sealer, a radio frequency detector and several cell phones.[2] Even so, Vu maintains that she was not actually living at Xiong and Pupp's residence at the time, and instead was living at a different apartment in La Crosse.

Tolvstad did not locate, question or arrest Vu on February 10. According to Tolvstad, this was due to his being "unable to locate" Vu until December 15, 2020, although he does not aver that he actually attempted to locate her between February and December. Moreover, Vu disputes that she was difficult to locate, pointing out that she

---

[2] Vu does not deny that her driver's license and other property were found in Xiong and Pupp's residence, but objects to defendants' reliance on this evidence on the ground that she was never provided with photocopies or video evidence to substantiate defendant *Tolvstad's* assertion that evidence was found linking her to the residence. This is also the subject of her motion to compel, in which she asks the court to compel defendants to provide her with documents proving that her driver's license and mail were found in the residence. (Dkt. #103.) However, defendants responded to this motion by averring that there is no documentation besides the evidence list, which shows what items were found in the residence (dkt. #107-2), and was previously provided to Vu. Because defendants cannot provide evidence they do not possess, Vu's motion to compel would normally be denied on the merits. However, since the court is granting summary judgment, it will be denied as moot.

was on probation at the time, had frequent contact with her probation officer, was arrested on February 15, 2020, and was held until February 19, by different La Crosse police officers on a related matter.

### B. December 2020 Stop, Search and Arrest

On December 15, 2020, between 8:00 and 8:30 p.m., an officer with the City of La Crosse Police Department, defendant Kevin Lozano, was on patrol and performed a random plate check on a white Chevrolet Malibu. The plate check indicated that the vehicle belonged to Kojoua Vu. Knowing Vu had a drug history, Officer Lozano then notified Investigator Tolvstad, who told Lozano to follow Vu because he had charges against her from a previous case. Next, Lozano followed Vu to an apartment complex, where she parked and exited the white Malibu, got into a black car and drove away.

When Inspector Tolvstad arrived at the apartment complex in a separate vehicle, both Officer Lozano and he began following Vu, with Lozano driving directly behind her. According to Officer Lozano, he could not see Vu through the rear driver's side window of her vehicle, so he concluded that the tinting on that window exceeded the legal limit. At the time, Lozano had been a police officer for approxiamtely 2.5 years and had made several stops for suspected window tint violations. Accordingly, he initiated a traffic stop and informed Vu that she was being pulled over for having illegal window tint. Although Vu responded that she had the window tint done professionally and within the legal limit, Lozano also asked Vu to exit the vehicle, after which he told her she was under arrest for unrelated drug charges.

After Investigator Tolvstad arrived at the scene of the stop, he advised Lozano that

3

Vu's vehicle could be searched because she was on probation for previous methamphetamine charges. Tolvstad also told Vu that she was being investigated for drug activities based on the February 2020 search of Xiong and Pupp's residence. During the subsequent search of Vu's car, Lozano and Tolvstad found Vu's purse, a methamphatamine test kit, two cell phones, and a magnet that could have been used to hide drugs and other contraband under the vehicle. Investigator Tolvstad also avers that he found a "gem bag" with "possible" methamphetamine residue inside, although Vu disputes he could have reasonably thought that the bag had methamphatmine residue in it, pointing out that: the bag contained a key ring; and Tolvstad did not even take the bag as evidence, nor did he have it tested. Tolvstad also noticed that most of the compartments in her car were loose and looked like they could have been used to conceal items.

Finally, Officer Lozano used a window tint meter to determine the level of light passing through the rear window of the vehicle.[3] That meter showed 28%, which was below the standard legal limit for light-pass-through of 35% in Wisconsin,[4] after which Lozano issued Vu a warning for the tint, and Vu was arrested on drug charges stemming from the original February search of Xiong and Pupp's residence.

## C. Search of Cell Phones and Prosecution

Investigator Tolvstad subsequently applied for a search warrant for the digital content on the two cell phones found in Vu's car. In his search warrant affidavit, Tolvstad

---

[3] Vu purports to dispute that Lozano tested the window tint, stating that she never saw him use it, but admits that she could not see Lozano at all times during the search because she was sitting in a police vehicle.

[4] Wis. Admin. Code § Trans 305.32(b).

4

stated that a search had been performed of "Sandy Xiong, Kojoua Vu and Zachary Pupp's residence" on February 10, 2020, and that investigators found 1.2 grams of methamphetamine, empty baggies, cell phones, Vu's driver's license, mail, clothing in Vu's size, and Vu's address book in "Kojoua's bedroom." (Dkt.#61-1, ¶¶ 5, 7.) He also stated that during the search of Vu's vehicle on December 15, 2020, he found methamphetamine urine tests and "plastic baggies with probable methamphatemine residue." (*Id.* ¶ 8.) A state court judge signed the search warrant, which led to discovery of further evidence on one of the cell phones showing that Vu had been involved in selling methamphetamine throughout 2020.

Following her December 2020 arrest, Vu was charged with maintaining a drug trafficking vehicle and possession of paraphernalia, based on her possession of methamphetamine and the earlier search of Xiong and Pupp's residence in February 2020. However, all of those charges were later dismissed on the prosecutor's motion.

OPINION

Plaintiff claims that defendants Lozano and Tolvstad violated her Fourth Amendment rights in four ways: (1) by stopping her vehicle without reasonable suspicion that she had committed a traffic violation or crime; (2) by arresting her without probable cause that she had committed a crime; (3) by searching her vehicle without reasonable suspicion; and (4) by submitting a false affidavit in support of the search of her cell phones. The court addresses each of these claims below.

A. **Traffic Stop**

Plaintiff contends that defendant Lozano violated her Fourth Amendment rights by effecting the traffic stop without reasonable suspicion that a crime had been committed. Under the Fourth Amendment, an officer may conduct a stop for investigatory purposes if the officer has particularized and reasonable suspicion that the suspect is engaged in illegal activity or involved in a traffic offense. *Navarette v. California*, 572 U.S. 393, 396 (2014); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Reasonableness requires "an objective inquiry into all of the circumstances known to the officer at the time he stopped the defendant." *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968) (reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion").

Defendants contend that plaintiff's stop was supported by reasonable suspicion that her vehicle's rear passenger window failed to meet Wisconsin's light-pass-through standards, Wis. Admin. Code § Trans 305.32(b), which permit rear window tinting only if the window allows at least 35% of light to pass through, except for tinting done during the original manufacture of a vehicle. Moreover, when measuring light transmittance, law enforcement must allow a tolerance of 3%. § Trans 305.32(7). However, the parties dispute whether plaintiff's windows violated these standards at the time she was pulled over.

Specifically, plaintiff says that subsequent testing of her windows showed 33% light-pass-through, which while technically violating the legal standards, still falls within the 3% tolerance allowed under the administrative code. As defendants point out, however,

6

whether the windows exceeded the tint limit is ultimately not determinative, since Officer Lozano did not need to ascertain with *certainty* that there was a window tint violation, as such a determination would have likely been impossible. *See State v. Conaway*, 2010 WI App 7, ¶ 7, 323 Wis. 2d 250, 779 N.W.2d 182 ("[o]fficers need not, and likely cannot, distinguish with the naked eye small variations in the amount of light that passes through suspect windows"). Rather, the question is whether defendants had a *reasonable basis* to believe there was a violation. *See United States v. Cole*, 21 F.4th 421, 428 (7th Cir. 2021) (relevant issue "is whether Trooper Chapman reasonably believed that he saw a traffic violation, not whether Cole actually violated the statute"); *United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019) ("If an officer reasonably thinks he sees a driver commit a traffic infraction, that is a sufficient basis to pull him over without violating the Constitution.").

To establish reasonable suspicion to stop a vehicle for a suspected window tint violation, therefore, an officer need only be able to articulate: (1) the general differences between legally and illegally tinted windows; and (2) the facts that made the particular window appear illegally tinted under the particular circumstances in which it was viewed. *Conaway*, 2010 WI App 7, ¶¶ 7–8. Here, Officer Lozano's testimony satisfies these requirements and is sufficient to establish reasonable suspicion. Specifically, Lozano testified credibly that he was familiar with how dark a minimally complying window appears and that plaintiff's window appeared similarly dark or darker, as he was unable to see plaintiff through the tinted window. (Lozano Decl. (dkt. #60) ¶¶ 12–15.) While plaintiff responds that Lozano could not have assessed her window tint because it was dark outside, and he had only a brief opportunity before he stopped her to look through the rear passenger window as she was turning, these objections are not sufficient to undermine

7

his testimony that he reasonably believed that plaintiff's windows violated Wisconsin's code based on the specific circumstances at the time. *See United States v. Gooch*, 915 F. Supp. 2d 690, 704 (W.D. Pa. 2012) (finding vehicle stop was based on reasonable suspicion where experienced trooper testified that he observed heavy tint on driver's side windows as the vehicle passed him going the speed limit, even though he was in a minimally lit area at night). Moreover, it is undisputed that plaintiff was driving her vehicle with windows tinted above the legal limit, so no reasonable jury could find that Lozano lacked reasonable suspicion that plaintiff was violating a safety regulation. *See Jordan v. Hynek*, No. 3:19-CV-518-MGG, 2022 WL 857030, at *2 (N.D. Ind. Mar. 23, 2022) ("[B]ecause Jordan's window tint was near the legal limit, Capt. Hynek had an objectively reasonable basis to initiate a traffic stop to determine Jordan's compliance with the window tinting statute.").

Finally, plaintiff argues that the officers' reliance on the window tint violation was pretextual, while they really wanted to investigate her for suspected drug offenses. This is likely true. However, "[t]he pertinent question is whether the traffic stop was objectively justified by facts known to the officers before stopping the car; nothing turns on their subjective motivation." *United States v. Davis*, No. 22-2973, 2023 WL 4575978, at *3 (7th Cir. July 18, 2023) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Accordingly, defendants are entitled to summary judgment on plaintiff's Fourth Amendment challenge to her traffic stop.

B. **Arrest**

Next, plaintiff claims that Officer Tolvstad arrested her without probable cause. An

8

officer may arrest someone if there is probable cause to believe that the suspect has committed, is committing, or is about to commit an offense. *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012). Defendants contend that they had probable cause to arrest plaintiff on drug charges based on the evidence they gathered in February 2020, during the search of Xiong and Pupp's residence. So long as defendants had probable cause to arrest plaintiff, her false arrest claim fails. *See Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983.").

Defendants contend that plaintiff's false arrest claim fails for two reasons.[5] First, they contend that plaintiff is precluded from arguing that defendants lacked probable cause to arrest her, having refused to answer whether she had ever lived with Xiong and Pupp at her deposition. Instead, she asserted her Fifth Amendment privilege against self-incrimination. (Vu Dep. (dkt. #65) 26.) However, defendants fail to explain why plaintiff's refusal to answer that question is relevant to the probable cause analysis. Probable cause depends on what a reasonable officer would have known at the time plaintiff was arrested, a point at which she plainly had a Fifth Amendment right to remain silent. Thus, plaintiff's refusal to answer questions in a civil lawsuit in February 2023

---

[5] Defendants also argue in their reply brief that plaintiff's claim is barred by issue preclusion because a state court judge determined during a preliminary hearing that probable cause existed for plaintiff's arrest. However, defendants waived this additional argument by failing to include it in their opening brief. *United States v. Hendrix*, 74 F.4th 859, 870 (7th Cir. 2023); *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond."). Moreover, because the prosecutor dismissed the criminal charges against plaintiff, no final judgment was entered, and issue preclusion would not clearly apply in any event. *See Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (issue preclusion may apply in Wisconsin if "the determination of the issue [was] essential to the final judgment" in state court).

about her residence in February 2020 is irrelevant to what a reasonable officer would have known at the time she was arrested in December 2020.

Second, defendants contend that they gathered sufficient evidence during the search of Xiong and Pupp's residence in February 2020 to form a reasonable belief that plaintiff was involved in methamphetamine possession, use and distribution, along with Xiong and Pupp. Defendants point specifically to evidence that: Tolvstad saw plaintiff come and go from the residence twice in a four-hour time span; officers found mail addressed to plaintiff, her driver's license, an address book, and clothing in her size in a bedroom, as well as methamphetamine, marijuana and drug paraphernalia associated with the packaging and sale of methamphetamine; Tolvstad knew plaintiff had been involved with selling methamphetamine in the past; and the other individuals living at the residence were arrested the day of the search while selling methamphetamine. The court agrees that this evidence was more than adequate for a reasonable police officer to find probable cause that plaintiff was once again involved in drug dealing.

Plaintiff's arguments to the contrary are not persuasive. As an initial matter, she argues that defendants have "no documentary proof" that they found or collected to link her to Xiong and Pupp's residence. In particular, she argues that defendants have failed to provide her with photocopies of the driver's license or mail that purportedly had her name on them, and the court should not simply accept Tolvstad's assertions nor place faith in the contemporaneous evidence inventory from the search stating that officers found evidence linking her to the residence. However, by themselves, these arguments are not sufficient to raise a genuine dispute of material fact regarding the evidence officers found linking plaintiff, at a minimum, to illegal drug possession. Indeed, besides asserting that

10

she was living at another apartment at the time, plaintiff has submitted no evidence undermining defendant Tolvstad's sworn, corroborated statements that plaintiff's driver's license, mail, clothing and address book were found in a drug trafficking residence to which she had been seen entering and exiting twice while drug transactions had been occurring.

Next, plaintiff argues that defendants waited too long to arrest her, and as a result, any arguable probable cause they had in February 2020 had expired by December 2020. However, "there is no requirement that an offender be arrested the moment probable cause is established." *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990). "When there is a reasonable belief that someone has committed a crime, time by itself does not make the existence of that fact any less probable." *United States v. Haldorson*, 941 F.3d 284, 292 (7th Cir. 2019). Indeed, "[i]t is the rare case where 'staleness' will be relevant to the legality of a warrantless arrest." *Id.* And here plaintiff can point to no intervening events that would undermine a reasonable police officer's finding of probable cause to believe that she had committed multiple drug offenses.

Finally, even if the evidence was insufficient to establish probable cause, defendants would be protected by qualified immunity. A government defendant is entitled to qualified immunity unless the plaintiff shows not only that the defendant violated his rights, but also that his rights were "clearly established" at the relevant time. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (qualified immunity protects government officials from personal liability provided that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). A law is "clearly established" if the law was sufficiently clear at the time of the officer's conduct that "every reasonable official would understand" the conduct "is unlawful." *District of Columbia v.*

11

*Wesby,* 583 U.S. 48, 63 (2018). In other words, "existing law must have placed the constitutionality of the conduct 'beyond debate.'" *Id.* This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

To overcome defendants' qualified immunity defense, plaintiff must point to either: (1) a closely analogous, binding case that was decided in her favor; or (2) a more general constitutional rule that applies "with obvious clarity" to the defendants' conduct. *See Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021). In this case, plaintiff has identified neither a case nor a general constitutional rule giving defendants notice that they could not rely on the evidence report from the February 2020 search to arrest plaintiff for drug offenses in December 2020. Therefore, defendants are entitled to summary judgment on plaintiff's false arrest claim.

### C. Search of the Vehicle

Plaintiff also challenges the search of her vehicle, though she concedes that she was on probation at the time of the search and that defendants could conduct the search so long as it satisfied the requirements of Wisconsin's Act 79. Wis. Stat. § 302.113(7r). (Plt.'s Br. (dkt. #99) 13.) To conduct an Act 79 search, an objectively reasonable officer must: (1) know the person is on supervision status; *and* (2) have reasonable suspicion that either the person "was committing, was about to commit, or had committed a crime" or

12

has committed "a violation of a condition of release to extended supervision." *Id.*; *see also State v. Anderson*, 2019 WI 97, ¶ 24, 389 Wis. 2d 106, 935 N.W.2d 285. If those requirements are present, an officer may lawfully search "any property" under the person's control. *Anderson*, 389 Wis. 2d 106, ¶ 24.

As discussed above, defendants had at least arguable probable cause to believe that plaintiff committed drug offenses in February 2020, leading to lawful grounds to search plaintiff's vehicle under Act 79, since they needed only "reasonable suspicion" that plaintiff "had committed a crime." Said another way, because reasonable suspicion is a lower standard than probable cause, defendants had reasonable suspicion and could conduct an Act 79 search of plaintiff's vehicle without violating the Fourth Amendment. *See United States v. Adair*, 925 F.3d 931, 935 (7th Cir. 2019) ("Reasonable suspicion is a lower threshold than probable cause and considerably less than preponderance of the evidence.") (citations omitted).

Plaintiff again argues that defendants' reasonable suspicion was somehow stale by the time they searched her car in December 2020, because there had been no evidence of suspected drug activity involving plaintiff in several months, nor was there a new basis to suspect that evidence of drug activity would be found in plaintiff's vehicle by December 2020. But this is beside the point. As previously discussed, the so-called "staleness" of evidence *could* diminish the probable cause or reasonable suspicion to conduct a search, *e.g.*, *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008), but the mere passage of time does *not* necessarily imply that a vehicle involved in drug transactions has ceased to be so, *e.g., United States v. Glenn*, 966 F.3d 659, 661 (7th Cir. 2020). Even if it did, it does not change proof of her drug dealing when she was driving in February 2020, nor the

13

reasonable suspicion that evidence of her drug possession or distribution might be found in that same vehicle a few months later.

The court need not resolve plaintiff's staleness argument, however, because plaintiff fails to cite any legal authority stating that "staleness" is a consideration that applies to reasonable suspicion to conduct an Act 79 search. To the contrary, Act 79 itself states only that officers must have "reasonable suspicion" that plaintiff "*had committed* a crime" to justify a search. At least one court has found that this language renders the law unclear. *United States v. Slater*, No. 21-CR-106-PP, 2022 WL 558097, at *25 (E.D. Wis. Feb. 24, 2022) ("It is not clear that the Fourth Amendment concept of "staleness" applies to an Act 79 search, which allows a search any time during the supervision period if officers have reasonable suspicion that a crime or violation has been committed.") As discussed above, if the law is "unclear," defendants are again protected by qualified immunity.

### D. Search of the Cell Phones

Finally, plaintiff claims that defendant Tolvstad violated her Fourth Amendment rights by lying to the court commissioner in his affidavit to obtain a warrant to search the cell phones he confiscated from her vehicle. "[F]alsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment*." Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019). Thus, "[a]n officer violates the Fourth Amendment if he intentionally or recklessly includes false statements in a warrant application and those false statements were material to a finding of probable cause." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). A warrant request also violates the Fourth Amendment if the requesting officer "intentionally or recklessly withholds material information from a

14

probable cause affidavit." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). To determine whether an alleged lie or omission is material, the court "eliminate[s] the alleged false statements, incorporate[s] any allegedly omitted facts, and then evaluate[s] whether the resulting 'hypothetical' affidavit would establish probable cause." *Id.* (citation omitted).

Plaintiff identifies several statements in Tolvstad's warrant affidavit (dkt. #61-1) as false or misleading: (1) the gem bag in her car contained "probable methamphetamine residue," when Tolvstad never tested the bag; (2) Tolvstad had "finally" located Vu in December 2020, despite no actual attempts to find her before that time; (3) plaintiff was observed coming and going from Xiong and Pupp's residence "several times," when it was only twice; (4) the search was conducted at "Sany Xiong, Kojoua Vu and Zachary Pupp's residence" and in "Kojoua's bedroom," when she was not actually living there; and (5) his failure to mention that the "bedroom" contained a washer and dryer and that no drugs were found in her vehicle during the February 2020 search.

The court agrees with defendants that none of these statements were clearly false. Rather, each could have supported an objective officer's reasonable interpretation of the evidence at that time. Moreover, plaintiff has failed to show that any of these statements was material to the issuance of the warrant. Indeed, without any of these challenged statements, probable cause to search plaintiff's phones existed based on the other statements in defendant Tolvstad's warrant affidavit, including that: (1) he knew Xiong and Vu had a history of distributing large amounts of methamphetamine before his December 2020 surveillance of the La Crosse residence; (2) he saw both Xiong and Vu come and go from the La Crosse residence twice on December 10; (3) Xiong was arrested

15

with more than 50 grams of methamphetamine on December 10; (4) officers found more than 200 grams of methamphetamine during a search of the residence the same day; (5) in a room with a bed, washer and dryer, officers found Vu's driver's license, mail addressed to her, an address book with her name, and clothes in her size, along with 1.2 grams of methamphetamine, a food saver which Tolvstad knew drug dealers use to package methamphetamine, unused gem baggies, cell phones and a small amount of THC; and (6) on February 15, 2020, Vu was stopped in the same vehicle she had been driving in December 2020, in which Tolvstad had found methamphetamine urine tests, IDs and credit cards, and two phones.

In sum, a "hypothetical affidavit" without the objectionable statements, and including plaintiff's desired additional information, would have been sufficient to establish a reasonable belief that plaintiff was involved in the sale and distribution of methamphetamine, and that she used the cell phones in such pursuits. Thus, plaintiff has failed to identify any material lies or omissions in the affidavit, nor any controlling case law or constitutional rule clearly establishing a Fourth Amendment violation, and defendants are entitled to summary judgment on this claim as well.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #57) is GRANTED.

2) Plaintiff Kojoua Vu's motion to compel (dkt. #103) and motion to stay (dkt. #105) are DENIED as moot.

3) The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 27th day of November, 2023.

                BY THE COURT:

                /s/

                _____
                WILLIAM M. CONLEY
                District Judge